No. 1979
Second Circuit Appeal

MARIE DERIVAS v. LEONTINE GASPARD, WIFE OF A. DOUZAT

(January 12, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Libel and Slander—Par. 1, 4, 6.
The elements essential to support an action of slander are that the charges made are false, and made maliciously, and that the party against whom they are made shall have suffered injury.

2. Louisiana Digest—Libel and Slander—Par. 36.
Where the alleged slanderous assertions are proven true there can be no recovery of damages, there being no slander.

Appeal from the Fourteenth Judicial District Court, Parish of Avoyelles. Hon. S. Allen Bordelon, Judge.

This is a suit for damages for slander. There was reconventional demand.

Judgment rejecting demands of plaintiff and reconventional demand.

Plaintiff appealed.

Judgment affirmed.

. Mr. Riddle, of Marksville, attorney for plaintiff, appellant.

Samuel Moreau, of Marksville, attorney for defendant, appellee.

ODOM, J.    This is a suit to recover the sum of $1150.00 damages for alleged slander and defamation of plaintiff by defendant.

"Plaintiff alleges that defendant charged, asserted, declared and circulated reports among the neighbors to the effect, when your petitioner was living in Hickory Hill in Avoyelles parish, about fourteen years ago, did associate with the Ethiopian race, or negro men, and more particularly one Victor Jacobs, and intimidated that petitioner was having illicit relation with them, and more especially one Victor Jacobs that your petitioner was as low as a dog and a sow and also she has made known and repeated all the above allegations on several occasions from time to time, all of which tendered to injure petitioner's character". And she alleges that all such assertions are untrue, malicious and were circulated to injure her, and that said slanderous reports has caused her great embarrassment and injured her feelings and pride of family and she considers and avers that she has been damaged:

Five hundred dollars ($500.00) for humiliation, embarrassment, injury to her feelings and to her family; and five hundred ($500.00) dollars punitive damages for slander upon her name, character and reputation and one hundred ($100.00) for attorney's fees.

Defendant, in her answer, denied partically all the allegations of plaintiff's petition; and further answering, alleged that the plaintiff is living in open concubinage with respondent's father and that of such illicit union several children have been born; that long before plaintiff began to live in open adultery with defendant's father, plaintiff had the reputation of being a common prostitute, and that her living in open concubinage with defendant's father is and has been for a long time a menace to society in that community, and she especially alleges that she at no time made statements which were untrue or false, but. she admits that on one occasion her father, accompanied by a witness came to her and asked her "Is it true you accuse Marie Derivas of coming at night with a negro man to your house and store to purchase syrup" and that her answer to that question was "yes" and that she was asked by her father if she meant to accuse Marie Derivas of "Committing a wrong" with the negro man, Victor Jacobs, and that her answer was "That she could not answer the question because they left her place in the dark of night and she did not attempt to keep track of them".

The case was tried in the lower court and resulted in a judgment in favor of defendant, rejecting plaintiff's demands at her costs.

## OPINION.

The facts, as disclosed by the record, are that Marie Derivas, now about 37 years old, was born in the town of Marksville of an illicit union between A. D. Derivas and Azeline Dupius.

She was adopted and reared by a respectable family, and when about 16 or 17 years old, she left the home provided for her by her foster parents and soon thereafter gave birth to a child, the result of an illicit union between herself and one Dallas Dupius. That child is now nineteen

years old. Some time after the birth of the first child, just how long is not disclosed, she began to live in open adultery with Emile Gaspard, the father of Mrs, Leontine Gaspard Douzat, the defendant. Of this illicit union three children have been born, the youngest being now fourteen years old.

At the time Emile Gaspard began to live in open adultery with plaintiff, he was married and he and his wife had reared several children, one of whom is defendant.

Emile Gaspard and plaintiff have lived in open adultery in the vicinity where Gaspard's lawful wife and all his legitimate children reside for a great many years, and it seems that it was a source of great annoyance and humilitation to his wife and his legitimate children. Defendant is a woman of good character, is married, and she and her husband are rearing a family of children.

They also reside in the vicinity where defendant's father and plaintiff are living together in open concubinage.

We have no doubt that defendant was very much humiliated by shame and disgrace which her father had brought upon her and all the members of the family, and that she resented the treatment her father had accorded her mother by leaving her practically without means, and throwing upon her the burden of supporting a large family of children, and bestowing his affections and the fruits of his labor upon Marie Derivas and the offspring of his adulterous union with her. The record shows that she remonstrated with her father almost every time she met him and tried to prevail upon him to leave the plaintiff and to cease a course of conduct which was a constant source of humiliation and shame to defendant, her children, her mother and her brothers and sisters, and tried to get him to return to his lawful wife.

The following testimony by defendant's father Emile Gaspard, shows the attitude of defendant.

"Q. Did not your other children offer to support you and all contribute to your support if you wanted to live with them or return to your legal wife?

"A. No, she (meaning defendant) is the only one. She did not like to see me in that position, and she could not take me as she was poor and she had others to provide for," and he was asked (page 17) "Is she the only daughter that talked of the woman you lived with?"

"A. They all talked about her, but the others did not talk bad about her, and put her, as Mrs. Abelus Douzat did, with negroes."

The feeling of all the legitimate children, especially the daughters, of Emile Gaspard, may well be imagined, and that they talked on (about) their father's concubine, under the circumstances, it is not unnatural or suprising. It seems that defendant was more intense in her feelings and desire to see her father cast off his adulterous relations with plaintiff, and we have no doubt that she was active in her effort to that end and made remarks about plaintiff's character. But whether she ever called her a "bitch" or a "sow" is doubtful. Defendant says she did not. The witnesses are not agreed as to that. Defendant did, however, say on numerous occasions that she had seen plaintiff in company with a negro. She says she saw her in the field talking to a negro in the turn row, and we have no doubt that it is true. It is evident that plaintiff had on different occasions done manual labor in the fields of others and that there were probably negroes working in the same field at the same time. Defendant said also that plaintiff come to her store one night about 10 or 11 o'clock in company with one Victor Jacob, a negro man to buy syrup. She says that is true and the testimony on that point is corroborated by that of her husband and of Napoleon Gaspard, a

kinsman. We think it is true that plaintiff did go to the store with this colored man, at night, to get syrup. That is all defendant ever said she did. She did not say that plaintiff was guilty of any immoral conduct with this negro, but she did say she thought such conduct was wrong and she commented upon it. She says her father was at that time living with plaintiff. She was asked:

"Q. It made you angry to think about this?
"A. Yes, sir, it did.
"Q. But it made you angry seeing the woman your father was living with in company with the negro?
"A. Yes sir, after seeing and knowing what I knew and my father living with her.
"Q. The opinion which you had and still have by seeing this woman with this negro caused this anger, did it not?
"A. Not only that but seeing she took my father away from my mother, and I remembered these things, that it was unfortunate."

Further comment upon the facts of this case and the law applicable is necessary.

We will say, however, that in our opinion, all that the defendant ever did or said was done and said with the view and in the hope of breaking up the unholy and shameful alliance between Emile Gaspard, her father, and Marie Derivas, and that she was not actuated by a desire to injure the feelings of plaintiff.

The elements essential to support an action of slander are that the charges made are false, and made maliciously and that the party against whom they are made shall have suffered injury.

No citation of authority is necessary on this point. We do not find that defendant made any false statement about the plaintiff. She did say that plaintiff went to the store in the night time in company with a negro man. We think that it is true. She did not, however, state that plaintiff was guilty of cohabiting with this negro; although it may be said that she meant to convey that idea when she mentioned the fact of her keeping company with this negro man, but she did not say so. To say of a white woman that she keeps company with a negro man is not actionable slander if it is true, and we think it is true that plaintiff did on the occasion referred to go to the store of defendant, at night with the negro man, Victor Jacob; and we think it is also true that plaintiff was also seen in the field on the turn row with this same negro man. It may be that no wrong was intended by plaintiff on either occasion, for it may well be imagined that a woman who had lead the life she had lead and was then leading, would be rather loose and careless in her conduct. It may be that viewed from her standpoint, such conduct meant nothing. But what of the impression such conduct would naturally create in the minds of other people? We think comment was altogether natural, and especially by one who was so vitally interested as defendant was.

Plaintiff alleges that she has been damaged on account of the slander upon her name, character and reputation, and that her feelings have been wounded. Without comment, in detail, we state it as our opinion that nothing that the record shows that was said about her by Leontine Gaspard should have wounded the feelings, or could have injured the standing, character or reputation of a woman who so far forgot herself as go through the country at night accompanied only by a negro man, and who confesses in open court that she is now living and has been for many years living in open concubinage, and that she is the mother of four adulterous bastards.

This case affords no grounds for relief. We think the lower court made no error in rejecting plaintiff's demands and the demands of defendant in reconvention.

The judgment appealed from is therefore affirmed.

Plaintiff-appellant to pay all costs.